UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-61745-WILLIAMS/VALLE

THE ESTATE OF
VANNESS-NORVELL WHITE,

      Plaintiff,

v.

ANDREW SAUL, Commissioner of
Social Security Administration,

      Defendant.

_____/

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE**

      THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 16) (the "Motions"). United States District Judge Kathleen M. Williams has referred the Motions to the undersigned for a Report and Recommendation. *See* (ECF No. 2).

      After due consideration of the record and the parties' briefs, including Defendant's Response (ECF No. 17) and Plaintiff's Reply (ECF No. 18), and being otherwise fully advised in the matter, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (ECF No. 15) be **DENIED**, that Defendant's Motion for Summary Judgment (ECF No. 16) be **GRANTED**, and that the Administrative Law Judge's Decision ("ALJ's Decision") be **AFFIRMED** for the reasons set forth below.

## I.    PROCEDURAL HISTORY

      On April 15, 2011, Plaintiff Vaness White ("Plaintiff" or "claimant") applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and

XVI, respectively, of the Social Security Act, 42 U.S.C. § 401 *et seq*. (the "Act"). (R. 396-400, 401-09).[1] Plaintiff alleged a disability onset date of March 1, 2008. (R. 396, 402). Plaintiff's claims were denied initially and again upon reconsideration. (R. 191-95, 197-202). Thereafter, Plaintiff requested a hearing, but died three weeks prior to the hearing scheduled before Administrative Law Judge ("ALJ") Timothy Maher. (R. 102-12, 271). At the July 22, 2013 hearing, Plaintiff's mother appeared on Plaintiff's behalf (with counsel), but did not testify.[2] (R. 102-12). On August 19, 2013, the ALJ issued a decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act (the "Initial Decision"). (R. 168-78).

Subsequently, in October 2013, Plaintiff appealed the Initial Decision. (R. 285-86). On March 3, 2015, the Appeals Council remanded the case with instructions for the ALJ to address a number of issues and obtain supplemental evidence from a Vocational Expert if necessary. (R. 185-86). Then, upon remand, ALJ Wendy Hunn held three hearings, at which Plaintiff's representative and counsel were both present. At the first hearing on July 6, 2016, Dr. Edward Jasinski, a medical expert, testified. (R. 85-100). At the second hearing on September 16, 2016, Dr. Paul Wiese, another medical expert, testified.[3] (R. 64-80). Finally, at the December 2, 2016 hearing, Vocational Expert ("VE") Lisa Goudy testified. (R. 48-63). On April 12, 2017, the ALJ

---

[1] All references are to the record of the administrative proceeding filed as part of Defendant's Answer. *See* (ECF No. 13).

[2] Plaintiff's mother was substituted as a party on Plaintiff's behalf. (R. 270). Thereafter, Plaintiff's widow was substituted as a party. (R. 279).

[3] The hearing transcript, ALJ, and parties refer to the medical expert inconsistently as "Dr. William Weiss," "Dr. Paul Wiese," and "Dr. Paul Weise." *Compare* (R. 64, 65) *with* (R. 24, 36), (ECF No. 15 at 9-17), (ECF No. 18 at 8-14), and (ECF No. 16 at 4, 8-12). The Curriculum Vitae for the witness, however, identifies him as "Dr. Paul Wiese." (R. 1065-67). Accordingly, this Report will refer to the witness as "Dr. Paul Wiese."

issued a decision, again denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act (the "ALJ's Decision").[4]   (R. 20-39).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-5); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision.  (ECF No. 1); *see also* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.   <u>STANDARD OF REVIEW</u>

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek*, 139 S. Ct. at 1154; *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance").  A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).  Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is

---

[4] A deceased's estate cannot receive an underpayment of SSI.  20 C.F.R. § 416.542(b)(4); (ECF No. 16 at 2 n.2).  Thus, since the legal representative of the estate cannot sue for SSI benefits, all that remains for the Court's consideration is Plaintiff's DIB claim.  *See, e.g.*, *Preston v. Comm'r of Soc. Sec.*, No. 5:16-CV-350-OC-WTH-PRL, 2017 WL 2889776, at *1 n.3  (M.D. Fla. Apr. 28, 2017), *report and recommendation adopted*, No. 5:16-CV-350-OC-10PRL, 2017 WL 2881521 (M.D. Fla. July 6, 2017).

supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citing *Bloodsworth*, 703 F.2d at 1239).

To qualify for benefits, a claimant must be disabled within the meaning of the Act.  *See* 42 U.S.C. § 423 (standard for DIB).  A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1)    Is the person presently unemployed?
(2)    Is the person's impairment severe?
(3)    Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
(4)    Is the person unable to perform his or her former occupation?
(5)    Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4) (evaluation process for DIB).  An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  A negative answer to any question, other than Step 3, leads to a determination of "not disabled."  *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004).  At Step 4, the ALJ must consider: (i) the claimant's

residual functional capacity ("RFC"); and (ii) the claimant's ability to return to his past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  The regulations define RFC as that which an individual is still able to do despite the limitations caused by his impairments.  20 C.F.R. § 404.1545(a).  The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case.  20 C.F.R. § 404.1520(e).  The RFC assessment is used to determine whether the claimant can return to his past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled."  *Phillips*, 357 F.3d at 1238 (citations omitted).  If a claimant cannot return to his past relevant work, then the ALJ proceeds to Step 5.  *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." § 404.1520(a)(4)(v); *Phillips*, 357 F.3d at 1239 (citation omitted).  The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform.  *Phillips*, 357 F.3d at 1239.  If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled.  *Id.*  Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.  *Id.*  The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. part 404, subpart P, appendix 2); or (2) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy.  *Id.* at 1239-40.

## III.   **BACKGROUND**

### A.  **Plaintiff's Background**

Plaintiff was born on July 20, 1976 and had a high school education.  (R.  480, 484).  He was 31 years old on the alleged onset date (March 8, 2011) and died on June 24, 2013, at age 36,

from pulmonary thrombo-embolus.  (R. 105, 271, 690-91).  Plaintiff alleged that he was unable to

work due to bipolar disorder, leg injuries, and multiple gunshot wounds.  (R. 484).

### B.  Relevant Mental Health Records

Between September 2008 and June 2013, Plaintiff saw three consultative psychologists

(Drs. Adele Besner, Andres Nazario, and Laura Cohen) (Exs. 2F, 4F, 6F, and 11F).  On several

occasions, Plaintiff was also involuntarily committed under Florida's Baker Act[5] and treated at

Broward General Hospital and North Shore Medical Center.  (Exs. 1F, 8F, 9F, and 14F).

Additionally, between October 2009 and January 2010, Plaintiff visited Henderson Mental Health

Center (the "Henderson Clinic") three times for mental health treatment.  (Exs. 7F and 13F).  These

records are discussed below as they pertain to Plaintiff's arguments.  *See infra* part V.

### C.  Vocational Expert's Testimony

A VE testified at the December 2016 hearing and responded to a series of questions from

the ALJ.  (R. 49-63).  First, the VE identified Plaintiff's past relevant work as a medical oxygen

tank deliverer (medium, semiskilled work with an SVP of 3, but performed by Plaintiff at a heavy

exertion level), warehouse worker (medium, unskilled work with an SVP of 2), forklift operator

(medium, semiskilled work with an SVP of 3), and grocery store bagger (medium, unskilled work

with an SVP of 2).  (R. 56, 58, 59).

Next, the ALJ questioned the VE regarding a hypothetical individual of Plaintiff's age,

education, and previous work experience, who was limited to light work with the following

restrictions: (i) only simple, repetitive tasks;  (ii) occasional interaction with coworkers, the public

---

[5] The Baker Act is a Florida law that allows for people with mental illnesses to be held involuntarily
for up to 72 hours in a mental health treatment facility if they meet certain criteria. The Act can be
initiated by judges, law enforcement officials, doctors or mental health professionals.  *See* Fla.
Stat. § 394.451 *et seq.* (the "Florida Mental Health Act" or "Baker Act"); *see also United States v.
Talley*, 562 F. App'x 760, 763 (11th Cir. 2014).

and supervisors; (iii) no force or assembly pace; (iv) no unprotected heights, dangerous machinery; and (v) no climbing ropes, ladders, or scaffolds ("Hypothetical #1").  (R. 59-60).  According to the VE, such an individual could not perform Plaintiff's past relevant work, but could perform other work that exists in significant numbers in the national economy, including housekeeping/cleaner, mail room cleaner, and cafeteria attendant, all unskilled, light work with an SVP of 2.  (R. 60-61).

The ALJ then posed a second hypothetical to the VE further limiting the individual to only "incidental interaction" (as opposed to occasional interaction) with coworkers and the public. (R. 61).  The VE testified that this individual would nonetheless still be able to perform the housekeeping/cleaner job.  *Id.*

Lastly, as a third hypothetical, the ALJ asked the VE whether the individual in Hypothetical #1 (i.e., who was limited to: (i) simple, repetitive tasks; (ii) occasional interaction with coworkers, the public and supervisors; (iii) no force or assembly pace; (iv) no unprotected heights or dangerous machinery; and (v) no climbing ropes, ladders, or scaffolds), who also needed two extra 15-minute breaks during the workday, could perform any of the three jobs previously identified by the VE.  (R. 62).  The VE testified that this third hypothetical individual would be precluded from performing any job in the national economy.  *Id.*

## IV.    THE ALJ'S DECISION

After reviewing the evidence and conducting the requisite five-step analysis, the ALJ concluded that Plaintiff "has not been under a disability, as defined by the Social Security Act, from March 1, 2008, through the date of this decision."  (R. 21, 38).

At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 1, 2008, the alleged onset date.  (R. 23).

At Step 2, the ALJ found that Plaintiff had the following severe impairments:  pulmonary

emboli with medical non-compliance, status post gunshot wounds with multiple arthalgias [sic], history of depressive disorder, polysubstance abuse disorder, and rule out personality disorder. (R. 23-24).

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  (R. 24).

At Step 4, the ALJ determined that Plaintiff had the residual functional capacity to perform light work, further limited to: (i)  simple, repetitive tasks; (ii) only occasional interaction with the public, co-workers, and supervisors; (iii) no force or assembly line pace; (iv) no work in unprotected heights, dangerous machinery, or open hazards; and (v) no climbing ladders, ropes or scaffolds.  (R. 28).

In reaching this conclusion at Step 4, the ALJ considered Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, as well as opinion evidence.  *Id.*  Although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (R. 34).  Nonetheless, the ALJ concluded that Plaintiff was not able to perform any of his past relevant work and proceeded to Step 5.  (R. 37-38).

At Step 5, the ALJ found that there were other jobs in the national economy that Plaintiff could perform, such as housekeeping/cleaner, mail room clerk, and cafeteria attendant (all unskilled, light work with an SVP of 2).  (R. 38).  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.  *Id.*

# V.    <u>DISCUSSION</u>

Plaintiff raises four primary arguments on appeal.  First, Plaintiff argues that the ALJ improperly discounted the opinions of consultative examiners Drs. Besner, Nazario, and Cohen. (ECF No. 15 at 4-10).  Second, Plaintiff argues that the ALJ mischaracterized Dr. Wiese's testimony and also failed to identify what weight, if any, she gave to the doctor's testimony that Plaintiff met the Listings and required a restriction to "sheltered work."  *Id.* at 10-17.  Next, Plaintiff argues that the ALJ erred at Step 4 in assessing Plaintiff's RFC by failing to perform a function by function analysis and not including additional mental limitations. *Id.* at 17-22.  Lastly, Plaintiff argues that the ALJ erred at Step 5 by not identifying and resolving an apparent conflict between Plaintiff's RFC and the VE's testimony on the one hand, with the DOT reasoning requirements for the cafeteria attendant and mail room clerk jobs on the other hand.  *Id.* at 22-30.

For the reasons discussed below, the undersigned finds that the ALJ applied the correct legal standards and that the ALJ's Decision is supported by substantial evidence.  Accordingly, the ALJ's Decision should be affirmed.

## A.  The ALJ Properly Weighed the Opinions of the Consultative Examiners

Social Security regulations require the ALJ to consider and evaluate every medical opinion received in determining whether a claimant is disabled.  *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").  Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).

In weighing medical opinions, an ALJ is required to consider certain factors, including: (i) whether the claimant has an examining or treating relationship with the medical source; (ii) the

medical source's area of specialization; (iii) whether the medical source's opinion is well-supported; and (iv) whether the opinion is consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(i)-(v). Notably, however, the ALJ owes no deference to the opinion of a physician who conducts a single examination. *See Eyre v. Comm'r of Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014); *see also Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (holding that ALJ does not have to defer to opinion of doctor who conducted single examination and who was not treating source).

### 1. The ALJ Correctly Evaluated Dr. Besner's Opinion

Plaintiff argues that the ALJ improperly discounted Dr. Besner's opinions of March and September 2008. (ECF No. 15 at 5-6); *see* (R. 605-08, 613-15). At the March 2008 consultative examination, Dr. Besner stated:

> [Plaintiff] is a thirty-one year old male who presented as friendly and cooperative. His mood was depressed and affect was congruent. He denied any current suicidal and homicidal thoughts. Insight and judgment appeared adequate. He did not evidence any perceptual disturbances or hallucinations during the evaluation.
>
> [Plaintiff] was able to state the correct year, but not the month or day of the week. Immediate memory was variable, as he was able to recite six digits forward and four digits backwards. Recent memory was poor, as he recalled none of six items presented, after a five-minute delay. In terms of remote memory, he could recall his place of birth and the name of his school, as well as details of past events. His fund of information was poor. He was able to identify the current president. He was unable to name the past president, or the state governor. He was unable to name a current event. He was unable to name five large US cities, or the capital of France. [He] was able to give a functional definition. He had difficulty performing some simple single-digit mathematical calculations. He stated that 4+6=8. He was able to subtract seven from one hundred. However, he was able to multiple 8x7. His abstract thinking is poor, as he was unable to identify concrete commonalities among different but similar concepts and could not correctly explain common proverbs. For example, he was unable to explain how a telephone and radio are alike, and he was unable to explain the proverb, "It's raining cats and dogs."
>
> On the Rey-Item 15, [Plaintiff] was able to recall nine correct designs. A recall of less than nine suggests malingering.

(R. 607).

Regarding ability to work, Dr. Besner opined that "[Plaintiff] does not appear able to perform some of the activities that may be required by a workplace.  His emotional difficulties may impact his ability to perform.  He may require assistance with the management of his funds due to his mathematical abilities."  *Id.*  Dr. Besner's observations at the September 2008 mental status examination were similar.  *Compare* (R. 607) *with* (R. 615).

At both examinations, Dr. Besner diagnosed Plaintiff with major depressive disorder, recurrent severe with psychotic features, and generalized anxiety disorder.  (R. 608, 615).  Dr. Besner also noted that Plaintiff was not under the care of physician and was not receiving mental health services, but were he to receive this assistance, along with any other services recommended, his current prognosis was fair.  (R. 607, 615).

The ALJ accorded "little" and "some" weight to different parts of Dr. Besner's opinions.  Specifically, the ALJ gave "little weight" to Dr. Besner's opinion that "[Plaintiff] did not appear able to perform some of the activities that may be required by a workplace and that his emotional difficulties could impact his ability to perform" because "Dr. Besner did not *specify which activities* or *to what degree* and she did recognize that the claimant was not under psychiatric treatments, which evidently would have improved his abilities."  (R. 35) (emphasis added); *see also* (R. 31) (ALJ's more detailed discussion of Dr. Besner's March and September 2008 examinations).  Conversely, the ALJ gave "some weight" to Dr. Besner's opinion that "[Plaintiff] could have required assistance with the management of his funds due to his mathematical abilities" as being "consistent with [the doctor's] examination of the claimant."  (R. 35).

The undersigned finds no error in the ALJ's assessment of Dr. Besner's opinion.  First, the ALJ's assessment is consistent with Social Security regulations, which provide that the better explanation a source provides for a medical opinion, the more weight an ALJ will give that opinion.  20 C.F.R. § 404.1527(c)(3).  As well, the ALJ owes no deference to the opinion of a physician

who conducts a single examination. *Eyre,* 586 F. App'x at 523; *see also Denomme,* 518 F. App'x at 877. Further, each of Dr. Besner's evaluations contain similar mental status results and diagnosis without evidence of deterioration. *Compare* (R. 607) *with* (R. 615). Moreover, Dr. Besner's opinions offer little guidance in that she does not describe Plaintiff's functional limitations nor state what he can still do despite his impairments. Against this backdrop, the undersigned finds that the ALJ clearly articulated her reasons for evaluating Dr. Besner's opinions, and applied the proper legal standards.

2. *The ALJ Properly Evaluated Dr. Nazario's Opinion*

Plaintiff also challenges the ALJ's assessment of Dr. Nazario's opinion. (ECF No. 15 at 6). Dr. Nazario performed a one-time consultative examination of Plaintiff in October 2009. On mental status examination, Dr. Nazario noted:

> [Plaintiff] arrived early for the interview. He was alert and cooperative throughout the interview. His mood seems depressed and his affect was appropriate to the content of the interview. [Plaintiff] was oriented to person, place, and time. His memory, both recent and remote[,] appears intact. He was not able to name the President of the United States stating "I don't vote so I don't know . . . I don't keep up with anything." He was able to perform several [sic] a series of mental status tests without error or difficulty. Asked to find a similarity between an apple and an orange, he stated "they can be peeled[."] He was able to subtract seven from 100, and able to count backwards from 20. He was able to recall two of three objects after a five minute delay. He was able to repeat a five digit sequence forward; and three of a four digit backwards inverting two digits. He was able to recall not having a meal the previous day and reports last having a meal "about a week ago[."] He demonstrated the ability to concentrate during the interview. He was not persistent in his approach, and his pace appeared adequate. There was no evidence of delusions or obsessions. He reports auditory hallucinations. There was no evidence of word finding difficulties or aphasia. There is no evidence of speech impediment. There is indication of suicidal but not homicidal ideation at the present time. [Plaintiff] appears to be a man of average intelligence. His judgment and insight seem poor.

(R. 623).

Dr. Nazario diagnosed Plaintiff with schizoaffective disorder, bipolar type. *Id.* Further, the doctor noted that "[Plaintiff] could benefit from a psychiatric consultation for assessment of

12

possible benefit from psychotropic medications."  (R. 623).  Lastly, Dr. Nazario noted that "[Plaintiff] appears able to concentrate.  He may experience difficulty interacting with others appropriately given his reported symptoms [and] appears able to understand and retain simple instructions."  (R. 624).

The ALJ accurately summarized Dr. Nazario's findings and opinion and afforded it "some weight."  (R. 35); *see also* (R. 31-32) (the ALJ's more fulsome summary of Dr. Nazario's opinion). The undersigned finds no error in the ALJ's assessment of the doctor's evaluation.  First, as stated previously, the ALJ owed no specific deference to the opinion of a one-time examiner, like Dr. Nazario.  *See Eyre*, 586 F. App'x at 523; *Denomme*, 518 F. App'x at 877.  Second, the ALJ found Dr. Nazario's opinion that Plaintiff could "experience difficulty interacting with others appropriately given his reported symptoms and that [Plaintiff] appears able to understand and retain simple instructions" was consistent with the medical evidence, which the ALJ incorporated into Plaintiff's RFC requiring "unskilled work and occasional interaction" with others at work. (R. 35); *see* 20 C.F.R. § 404.1527(c)(4) (noting that the more consistent a medical opinion is with the record as a whole, the more weight the ALJ will give that opinion).  Lastly, and contrary to Plaintiff's arguments, the ALJ clearly articulated her reasons for giving Dr. Nazario's opinion "some" weight.  Accordingly, substantial evidence supports the ALJ's assessment of Dr. Nazario's opinion and the ALJ applied the proper legal standards.

### 3.  The ALJ Properly Evaluated Dr. Cohen's Opinion

Lastly, Plaintiff argues that the ALJ improperly discounted Dr. Cohen's November 2011 opinion.  (ECF No. 15 at 6-7); *see* (R. 659-62) (Ex. 11F).  On mental status examination, Dr. Cohen noted that:

> [Plaintiff] was not oriented times three.  He knew the year[,] but not the month, the date[,] or the day of the week.  He appeared alert.  When asked about his appetite he said, "I don't have one.  I hardly ever eat."  When asked about sleep he said,

"I'm on the streets.  It's barely [sic] hard to sleep.  I doze off when I can."  [Plaintiff] wore a cap on his head.  He further explained that he has been Baker Acted five times in less than a year for suicidal ideation and needs to make an appointment at [Henderson Clinic] this week.  He said, "I know I'm not stable right now."  He made eye contact.  His eyes appeared blood shot. He fidgeted his leg for the whole interview.  [His] affect was both sad and angry.

[Plaintiff's] immediate memory was poor to fair. He was able to recall five digits forward but could not understand the concept of repeating them backwards. . . . His recent memory was fair.  He had nothing for breakfast this morning and nothing for dinner last night.  He was only able to recall one of three words given ten minutes before even with several prompts on the other two words.  His remote memory was good . . . .

[Plaintiff's] general fund of knowledge was poor. He knew the current president but none of the others before him.  He did not know the capitol [sic] of France nor the governor of Florida.  He could not name five large U.S. cities. He could not describe two recent current events and said, "I don't have a TV to watch and I can't read." His ability to do calculations was also poor.  He could not complete serial sevens nor could he complete any of five multiplication and addition problems given even when more simpler ones were added.  He said, "I'm not a counter and I'm not a reader."  When  . . . asked if he could count to ten . . . he would not and said[,] "I'd rather not" and then said he could not count to ten, when asked.

[Plaintiff's] abstract reasoning ability was poor.  He could not translate any of three proverbs given.  He was able to accurately categorize two different concepts but in a simple way.  His judgment was fair to good.  If he was stranded in the airport with only a dollar in his pocket, he would walk.  If he was in the movie theatre and he was the first person to smell smoke and fire, he said, "I would get out.  I don't like smoke."  If he found a letter on the street that was sealed, addressed and had a new stamp on it, he would "take it to the mail postal."

(R. 660-61).  Dr. Cohen further opined that Plaintiff was "not competent to handle his own funds" and his prognosis was "guarded."  (R. 662).  Dr. Cohen diagnosed Plaintiff with bipolar disorder, personality disorder, and "borderline intellectual functioning or lower."  *Id.*

The ALJ accorded "some weight" to Dr. Cohen's opinion that Plaintiff was not competent to handle his own funds.  (R. 35); *see also* (R. 33) (the ALJ's summary of the doctor's evaluation).  The ALJ, however, discounted Dr. Cohen's prognosis because "[Plaintiff] was not under psychiatric treatment [and the record] noted that stabilization of his symptoms was possible with adherence to treatment."  (R. 35).  For example, although Plaintiff reported to Dr. Cohen that he

received mental treatment at the Henderson Clinic for five years, Henderson Clinic records in fact reflect that Plaintiff received treatment only three times in three months. *Compare* (R. 659) (Plaintiff's self-report that he attended Henderson Clinic for five years) *with* (Exs. 7F and 13F); (R. 671) (record from Henderson Clinic that Plaintiff was treated in October and November 2009, and was last seen in January 2010). These are sufficient reasons, fully supported by the record, for the ALJ to discount Dr. Cohen's opinion.

Moreover, as discussed previously, the ALJ owes no special deference to the opinion of a one-time examiner, such as Dr. Cohen. *See Eyre*, 586 F. App'x at 523; *Denomme,* 518 F. App'x at 877. Furthermore, a court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel,* 631 F.3d at 1178 (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth,* 703 F.2d at 1239 (citing 42 U.S.C. § 405(g)). Ultimately, it is the ALJ's duty to weigh the medical evidence. *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008).

For the foregoing reasons, the undersigned concludes that the ALJ properly weighed the opinions of the three consultative examiners, applied the proper legal standards, and the ALJ's determination is supported by substantial evidence.

### B.  The ALJ Properly Evaluated the Testimony of Dr. Wiese

With reference to Dr. Wiese's opinion, Plaintiff argues that the ALJ erred by: (i) failing to identify what weight, if any, she gave to the opinion of Dr. Wiese (ECF No.15 at 15-17); (ii) materially mischaracterizing Dr. Wiese's opinion regarding whether Plaintiff met or equaled

Listing 12.04 (*Id.* at 11-14); and (iii) not including Dr. Wiese's limitation of "sheltered work" in the RFC.[6]   (*Id.* at 14-15).  For the reasons discussed below, Plaintiff's arguments are unavailing.

      *1.   Listing 12.04 – Depressive, Bipolar and Related Disorders*

      At Step 3 of the sequential evaluation, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals the Listings.  (R. 24).  More specifically, the ALJ considered the mental disorders in Section 12.00 of the Listings and the opinion testimony of psychologists Drs. Jasinski and Wiese about whether Plaintiff met or equaled Listing 12.04.  (R. 24-25).  The ALJ afforded "significant weight" to the opinions of Drs. Jasinski and Wiese.  (R. 36).  While Dr. Wiese opined that Plaintiff may have met or equaled the criteria in Paragraphs A and C of Listing 12.04 based on the totality of the evidence (including the one-time evaluations and various hospitalizations), Dr. Jasinski opined that Plaintiff did not meet the criteria for Listing 12.04.  *Compare* (R. 72-73) (Dr. Wiese's testimony that Plaintiff met or equaled Listing 12.04 if one considered all of the evidence) *with* (R. 88-89) (Dr. Jasinski's testimony that Plaintiff did not meet either the Paragraph B or C criteria for Listing 12.04).  Notably, Plaintiff does not challenge the ALJ's assessment of Dr. Jasinski's opinion.

      Listing 12.04, which contains separate criteria in Paragraphs A, B, and C, addresses depressive, bipolar, and related disorders.[7]  20 C.F.R. Part 404, Subpart. P, Appendix 1, at 67.  To meet or equal the Listing, the mental disorder must satisfy the requirements of both Paragraphs

---

[6]  The undersigned will address Plaintiff's argument regarding "sheltered work" below in discussing Plaintiff's challenge to the ALJ's RFC assessment.  *See infra* part V.C.1.

[7]  Disorders within Listing 12.04 "are characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning."  20 C.F.R. Part 404, Subpart. P, Appendix 1, at 58.  "Symptoms and signs may include, but are not limited to, feelings of hopelessness or guilt, suicidal ideation, a clinically significant change in body weight or appetite, sleep disturbances, [and] psychomotor abnormalities . . . ."  *Id.*

A and B, or the requirements of both Paragraphs A and C.  *Id.*  More specifically, Listing 12.04

requires:

A. Medical documentation of the requirements of paragraph 1 or 2:

1. Depressive disorder, characterized by five or more of the following: (a) Depressed mood; (b) Diminished interest in almost all activities; (c) Appetite disturbance with change in weight; (d) Sleep disturbance; (e) Observable psychomotor agitation or retardation; (f) Decreased energy; (g) Feelings of guilt or worthlessness; (h) Difficulty concentrating or thinking; or (i) Thoughts of death or suicide.

2. Bipolar disorder, characterized by three or more of the following: (a) Pressured speech; (b) Flight of ideas; (c) Inflated self-esteem; (d) Decreased need for sleep; (e) Distractibility; (f) Involvement in activities that have a high probability of painful consequences that are not recognized; or (g) Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning[:] (1) Understand, remember, or apply information[;] (2) Interact with others[;] (3) Concentrate, persist, or maintain pace[;](4) Adapt or manage oneself[.]

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder[;] and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life[.]

*Id.*

   2.  *Dr. Wiese's Opinion Regarding Listing 12.04*

At the September 2016 hearing, Dr. Wiese testified based on his review of the medical

evidence in the record.  (R. 67-79).  Although Plaintiff quotes excerpts of the doctor's testimony

in his Motion, *see* (ECF No. 15 at 9-15), the hearing transcript reflects that Dr. Wiese's testimony (regarding Plaintiff's diagnosis and whether Plaintiff met or equaled Listing 12.04) was more nuanced than Plaintiff's recital.   Indeed, Dr. Wiese's opinion varied greatly, depending on whether he considered only the actual treatment records for Plaintiff or the record as a whole.   For example, based on his review of the sparse treatment notes from the Henderson Clinic (three visits in three months of treatment), Dr. Wiese testified that Plaintiff would not meet or equal the criteria of Paragraphs A, B, or C of Listing 12.04.   (R. 72-75).   If, however, Dr. Wiese considered "the entirety of the medical evidence," including the four one-time consultative examinations and the various hospitalization records, then Plaintiff would meet Paragraph A of Listing 12.04.   (R. 72, 78).   Even so, as discussed below, Dr. Wiese noted that an accurate diagnosis would require longitudinal treatment.   (R. 76).

Similarly, Dr. Wiese noted that based on the scant treatment notes, Plaintiff would not meet the criteria in Paragraph B, which required a period of at least a year.[8]   (R. 72-73, 75).   On the other hand, Dr. Wiese opined that "there would be an equaling if we consider all of the evidence."[9] (R. 73).   Although Dr. Wiese opined that Plaintiff's limitations in social functioning and concentration were "occasionally [at] marked level and at least three decompensations," he acknowledged that he did not "have much information in-between those times" so that Plaintiff's social functioning "may be as much as moderate."  *Id.*   Noting the absence of longitudinal records,

---

[8] Longitudinal medical evidence for mental impairments is generally a period of months or perhaps years. For Listing 12.04 Paragraph C, however, the requisite duration is 2 years. 20 C.F.R. Part 404, Subpart. P, Appendix 1, at 61.

[9] Dr. Wiese stated: "I would believe that we have an equaling if we consider all the evidence. And that's based on the [hospital psychiatric] admissions, the auditory hallucinations reported, depressive symptoms, the homicidal ideation reported in the [Emergency Room] and the consultative exams. And these affect primarily social and concentrating, social functioning, concentration to occasionally marked level and at least three decompensations."  (R. 73).

Dr. Wiese relied on emergency room records (Exs. 1F and 9F) and one-time consultative examinations (Exs. 2F, 4F, 6F, and 9F), which unfortunately provided merely a "series of one-shot snapshots throughout the time." (R. 73-74, 76). Further, as to activities of daily living, Dr. Wiese opined that, based on Plaintiff's self-report, Plaintiff would have occasional to moderate limitations. (R. 74); *see* (R. 499-506) (Ex. 6E) (Plaintiff's Adult Function Report).

Regarding the Paragraph C criteria, Dr. Wiese opined that based on "the totality of the evidence," Plaintiff would meet the Listing for the closed period from February 2008 through perhaps November 2011. (R. 74-75).

Regarding Plaintiff's diagnosis, Dr. Wiese opined that it was "difficult to establish a clear-cut diagnosis unless you see a patient longitudinally." (R. 76). Dr. Wiese noted that there were no longitudinal treatment records, but rather a "series of one-shot snapshots throughout the time period," which resulted in "slightly different" diagnosis from the different doctors. *Id.* Nonetheless, Dr. Wiese acknowledged that the medical opinions in the record were "generally" consistent and supported by the evidence, although they were based on "one-shot snapshots." *Id.*

### 3. The ALJ Sufficiently Articulated and Properly Weighed Dr. Wiese's Opinion

As noted above, the ALJ must consider and evaluate every medical opinion received in determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). Moreover, the opinion of a non-examining source "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)); *see also McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

Plaintiff generally argues that the ALJ failed to articulate the weight she gave to Dr. Wiese's opinion regarding whether Plaintiff met or equaled Listing 12.04. (ECF No. 15 at 10-

17).   Plaintiff's arguments, however, are unpersuasive.   First, as a non-examining source, Dr. Wiese's opinion was not entitled to any specific deference.   *Swindle*, 914 F.2d at 226 n.3 (citation omitted) (noting that because doctor did not examine claimant, his opinion was only entitled to little weigh); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (noting that the ALJ can discount even the opinion of a treating physician, as long as the ALJ articulates her reasons); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) ("The law is clear that . . . the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." (quoting *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981)).

Second, the ALJ assigned "significant weight" to Dr. Wiese's opinion "that the record failed to hold longitudinal evidence to properly evaluate the claimant's level of functioning." (R. 36).  As to Dr. Wiese's opinion regarding the Listings, the ALJ stated:

> Again, vital evidence from relevant sources over a sufficiently long period prior to the date of adjudication was non-existing.  Although Dr. Wiese opined that it was possible that the claimant's impairment equaled a listing for a closed period or that the claimant may have been functionally limited to sheltered employment, he clarified that this would have been so if all of the medical evidence of record was taken into account.  However, as discussed herein, the other evidence consisted mostly of one-time examinations by consultative examiners and emergency room physicians who did not have the opportunity to evaluate the claimant's condition for a significantly extended period.

*Id.*  The ALJ also noted:

> Overall, Dr. Wiese also acknowledged that there were only three month[s] of treatment notes for a mental condition.  *Hence, the need for longitudinal evidence to properly evaluate the claimant's level of functioning was not satisfied*.[]  Vital evidence from relevant sources over a sufficiently long period prior to the date of adjudication was non-existing.

(R. 25) (emphasis added).   Regarding the need for longitudinal evidence, the ALJ further explained:

> An individual's level of functioning may vary considerably over time  The level of functioning at a specific time may seem relatively adequate or, conversely, rather poor.  Proper evaluation of impairment(s) must take into

account any variations in the level of the individuals [sic] functioning in arriving at a determination of severity over time.  Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period to the date of adjudication to establish an individual's impairment severity.

(R. 25 at n.1).  The ALJ's statement regarding the need for longitudinal evidence is consistent with the Listings, which provide that in the absence of longitudinal evidence, current evidence alone may not be sufficient or appropriate to establish that a claimant has met the necessary Listings criteria.  *See* 20 C.F.R. Part 404, Subpart. P, Appendix 1, at 61.

Fourth, the ALJ fully articulated substantial evidentiary reasons why Plaintiff did not meet or equal Listing 12.04.  For example, in evaluating the Paragraph B criteria, the ALJ concluded that Plaintiff had only moderate limitations in: (i) understanding, remembering, or applying information; (ii) interacting with others; and (iii) concentration, persistence, and pace.  (R. 25-26).  Moreover, Plaintiff had only mild limitations in adapting and managing himself.  (R. 27).  To further support her conclusion, the ALJ referenced record evidence and noted contradicting reports regarding Plaintiff's limitations.   (R. 25-27) (citing to Exs. 11 (Dr. Cohen's report), 6F (Dr. Nazario's report), and 7F (Henderson Clinic treatment records)).  Ultimately, the ALJ found that "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the Paragraph B criteria are not satisfied."  (R. 27).

As to the Paragraph C criteria, the ALJ noted that "the record does not establish that the claimant had a marginal adjustment that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that were not already part of the claimant's life."  *Id*.  The ALJ also noted that "no State agency psychological consultant concluded that a mental listing was medically equaled."  *Id.*

Lastly, the ALJ gave "significant weight" to Dr. Jasinski's opinion, which Plaintiff does not challenge.  (R. 36).  As the ALJ noted:

> Dr. Jasinski testified that based on his review of the evidence of record, the claimant's impairments did not meet or equal any of the listings of impairments. With regard to the B criteria, [Dr. Jasinski] opined that the claimant had only mild limitations in his activities of daily living. [Claimant's] concentration, persistence and pace fluctuated from mild to moderate[,] dependent on activities of daily living. [Dr. Jasinski] opined that the claimant's social functioning was moderately impaired . . . .

(R. 24).  Thus, Dr. Jasinski's opinion further supports the ALJ's Decision that Plaintiff did not meet or equal the Listings.

Notably, it is Plaintiff who bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  Here, Plaintiff failed to meet this burden.  Additionally, the final determination of whether Plaintiff meets or equals a Listing is an issue reserved for the ALJ even if the ALJ considers opinions from medical sources. 20 C.F.R. § 404.1527(d).  Moreover,  the ALJ is not required to "mechanically recite the evidence leading to her [Listings] determination."  *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (ALJ's implicit finding that claimant did not meet a Listing was clear where ALJ considered relevant law and evidence ALJ).

Against this factual and legal background, the undersigned finds that the ALJ properly discounted Dr. Wiese's opinion that Plaintiff met or equaled Listing 12.04.[10]  Ultimately, it is the

---

[10] Plaintiff also argues that, as to Dr. Wiese, the ALJ erred by stating that Drs. Jasinski and Wiese "generally opined that the claimant's impairments did not meet or equal a listing." (R. 24); *see* (ECF No. 15 at 13-14).  But contrary to Plaintiff's argument, and in the context of the ALJ's Decision, it is evident that the ALJ was fully aware of and carefully considered Dr. Wiese's opinion on Listing 12.04. (R. 24-25, 33, 36).  In context, this single introductory sentence to the ALJ's more detailed and fulsome analysis of the Listings does not amount to error warranting remand. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (noting that courts "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."); *see also Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (noting that ALJ's error is harmless "if it did not affect the ALJ's ultimate determination"); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.").

ALJ's duty to weigh the medical evidence.  *Milner*, 275 F. App'x at 948 (reiterating that the ALJ is to weigh the evidence).  Here, the ALJ properly weighed Dr. Wiese's opinion, applied the proper legal standards, and the ALJ's determination is supported by substantial evidence.

### C.  The ALJ Properly Determined Plaintiff's RFC

A claimant's RFC is the most a claimant can do despite the limitations caused by his impairments.  20 C.F.R. § 404.1545(a)(1).  Along with age, education, and work experience, the ALJ considers a claimant's RFC in determining whether the claimant can work.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citation omitted).  Social Security regulations classify the physical exertion requirements for work as sedentary, light, medium, heavy, and very heavy.  *See* 20 C.F.R. § 404.1567.  In the end, the responsibility for determining a claimant's RFC rests with the ALJ, and the ALJ is not required to give any special significance to the opinion of medical sources in determining the RFC.  *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015) (upholding ALJ's RFC finding that accounted for medical opinions not specifically discussed by the ALJ).

Plaintiff challenges the ALJ's RFC determination on several grounds.  First, Plaintiff argues that the RFC was not based on substantial evidence because the ALJ failed to conduct a function-by-function analysis of Plaintiff's mental limitations.  (ECF No. 15 at 17-20).  Next, Plaintiff argues that the ALJ erred in evaluating the opinion of Dr. Anne-Marie Bercik, the State Agency Reviewer on reconsideration, who completed a mental RFC assessment for Plaintiff.  (*Id.* at 20-22); *see also* (R. 156-59).  Lastly, Plaintiff argues that the ALJ erred in not including Dr. Bercik's mental limitations in the hypothetical questions posed to the VE.  (*Id.* at 22).

### 1.  *Plaintiff's RFC is Supported by Substantial Evidence*

At Step 4 of the sequential evaluation, the ALJ determined that Plaintiff had the RFC to perform light work, further limited to: (i) simple, repetitive tasks; (ii) only occasional interaction

with the public, co-workers, and supervisors; (iii) no force or assembly line pace; (iv) no unprotected heights, dangerous machinery, or open hazards; and (v) no climbing ladders, ropes or scaffolds.  (R. 28).

Plaintiff argues that "[t]he ALJ omitted any meaningful discussion of Plaintiffs' well-documented mental disorders" from the RFC.  (ECF No. 15 at 18).  More specifically, Plaintiff asserts that the ALJ erred in that "Plaintiff's anti-social disorder; homicidal and suicidal ideations; paranoia; auditory hallucinations; schizoaffective disorder; and bi-polar disorder were not included in the residual functional capacity assessment or in the hypothetical question posed to the vocational expert.  Thus, the residual functional capacity assessment and the hypothetical question posed to the vocational expert were not based upon substantial evidence."  *Id.*

Plaintiff's arguments, however, are unpersuasive.  First, the litany of ailments consists of symptoms and diagnosis, which do not necessarily result in functional limitations.[11]  *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (explaining that mere diagnosis of impairments "does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's [RFC] determination").  Moreover, although the ALJ must identify an individual's functional limitations or restrictions, *see* 20 C.F.R. § 1545, nothing in the regulations or case law require the ALJ to set out the specifics of her findings on a function-by-function basis.  *Abraham v. Colvin*, No. 3:14CV130/LC/MD, 2015 WL 5730154, at *4 (N.D. Fla. Aug. 31, 2015), *report*

---

[11] Relatedly, Plaintiff argues in passing—without evidentiary or legal support— that the ALJ erred in failing to consider the same litany of diagnosis and symptoms "as 'severe' impairments at *step two* despite the fact that these mental disorders were well-documented, diagnosed in the evidence of record, and part of Dr. Wiese's medical opinion . . . [and] despite being reported and documented by . . . Dr. Besner, Dr. Nazario, and Dr. Cohen."  (ECF No. 15 at 18) (emphasis added).  To the extent that Plaintiff seeks to challenge the ALJ's Step 2 determination, this conclusory argument is insufficient.  *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (noting that arguments raised "in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

*and recommendation adopted*, No. 3:14CV130/LC/MD, 2015 WL 5725780 (N.D. Fla. Sept. 29, 2015) (rejecting the claim that a the function-by-function analysis must be in writing where, as here, the ALJ considered all of the evidence in detail).  Accordingly, Plaintiff is not entitled to reversal on this ground.  *Id.*

Second, in determining Plaintiff's RFC, the ALJ fully considered the medical record, including Plaintiff's involuntary commitments in January and February 2008, July 2011, and October 2012, examinations by consultative examiners Drs. Besner, Nazario, and Cohen, and the treatment records from the Henderson Clinic  in October and November 2009, and January 2010. (R. 28-36).  After her review of the evidence, the ALJ concluded:

> While the record reflects that the claimant had severe mental disorders and required hospital admission on various occasions due to suicidal ideations and attempts, the record shows that claimant was inconsistent with treatment for his condition.  The record shows that when he was complaint with prescribed medications, he was discharged in stable conditions [sic] within days or even hours.  In fact, the claimant only sought treatment for a few months (Ex[s.] 7F and 13F).  In consideration of the psychiatric evidence, the [ALJ] finds the claimant was limited to unskilled work, which is defined in the [RFC].  Furthermore, since he has reported intermittent anger and irritability, the undersigned finds that he was limited to only occasional contact with the public, coworkers, and supervisors  . . . .  [Further, w]hile his pulmonary emboli resulted in his death, it is evidence that the claimant did not follow the recommended prescribed treatment.  Nonetheless, the undersigned has accorded the claimant the benefit of the doubt and limited him to a reduced range of light work exertion . . . .

(R. 34).

As noted above, an RFC determination is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments.  *Lewis*, 125 F.3d at 1440. Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ and she was not required to give any special significance to the opinion of medical sources on this issue.  *See* 20 C.F.R. § 404.1546(c); *Lewen*, 605 F. App'x at 968; *Moore v. Soc. Sec. Admin.*, *Comm'r,* 649 F. App'x 941, 945 (11th Cir. 2016); 20 C.F.R.  § 404.1527(d)(2).  Here, the ALJ succinctly

summarized the medical record and "gave claimant the benefit of the doubt," limiting Plaintiff to light work, "simple, repetitive tasks," and "only occasional interaction with the public, coworkers, and supervisors" in consideration of his mental impairments and reported intermittent anger and irritability. (R. 28). The undersigned fins no error in the ALJ's determination.

The undersigned is similarly unpersuaded by Plaintiff's argument that the ALJ erred in not including a restriction to "sheltered work" in Plaintiff's RFC. (ECF No. 15 at 15-16). Plaintiff's argument stems from Dr. Wiese's testimony that Plaintiff's functional limitations "approached sheltered work." (R. 77). The ALJ, however, was not required to accept or incorporate Dr. Wiese's opinion into the RFC determination. *See, e.g.*, *O'Bryant v. Comm'r of Soc. Sec. Admin.*, No. 7:17-CV-00060-JHE, 2018 WL 1524435, at *4 (N.D. Ala. Mar. 28, 2018) (noting that ALJ's assessment of a claimant's RFC is based on all the relevant evidence in the record, and not simply on a doctor's opinion) (citation omitted). Moreover, the ALJ's Decision is consistent with and supported by the testimony of Dr. Jasinski, who opined that Plaintiff's contact with the public and coworkers should be limited, "but not precluded." (R. 24); *see* (R. 89). The ALJ's opinion is also consistent with Dr. Nazario's opinion that ""[Plaintiff] may experience difficulty interacting with others appropriately given his reported symptoms [but] appears able to understand and retain simple instructions." (R. 624).

Ultimately, the ALJ's RFC determination does not require a matching medical opinion. *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (noting that although a claimant may provide a statement containing a physician's opinion of his capabilities, the ultimate determination of disability is reserved for the ALJ). Thus, undersigned finds that the ALJ's RFC is consistent with and supported by the medical evidence and the ALJ did not err.

2. *The RFC is Fully Consistent with Dr. Bercik's Opinion*

In November 2011, State Agency Reviewer Dr. Bercik reviewed the medical evidence and concluded that although Plaintiff's affective disorder was "severe," he was not disabled or limited to unskilled work.  (R. 154, 159).  Rather, Dr. Bercik opined that Plaintiff had "moderate" limitations in the ability to: (i)  carry out detailed instructions; (ii) maintain attention and concentration for extended periods; (iii) work in coordination with or in proximity to others without being distracted; (iv) interact appropriately with the general public; (v) accept instructions and respond appropriately to criticism from supervisors; and (vi) respond appropriately to changes in work setting.  (R. 157-58).

Dr. Bercik further opined that Plaintiff was not significantly limited in his ability to: (i) carry out very short and simple instructions; (ii) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (iii) sustain an ordinary routine without supervision; (iv) make simple work-related decisions; (v) complete a normal workday without interruptions from psychologically based symptoms; (vi) ask simple questions or request assistance; (vii) maintain socially appropriate behavior and adhere to public standards of neatness and cleanliness.  *Id.*

In addition, Dr. Bercik noted that "medical sources indicate claimant would be able to carry out simple instructions, but would have difficulties carry[ing] out more detailed instructions [and] working in proximity to others." (R. 157).   Furthermore, "claimant may need to work in environment with minimal social interaction."  (R. 158).

The ALJ accorded Dr. Bercik's opinion "considerable weight" and found it to be "generally consistent with the medical evidence of record."  (R. 36).  Based on Dr. Bercik's opinion, the ALJ limited Plaintiff to "unskilled, non-hazardous, non-production work involving not more than *occasional interaction* with supervisors, coworkers, and the public."  *Id.* (emphasis added).

Plaintiff asserts that the ALJ "mischaracterized Dr. Bercik's opinion" regarding his ability to interact with others, and should have instead restricted Plaintiff to "*incidental interaction* with coworkers and supervisors." (ECF No. 18 at 2) (emphasis added). The undersigned disagrees.

First, a simple comparison of the ALJ's RFC with Dr. Bercik's RFC confirms that the two are consistent. *Compare* (R. 28) *with* (R. 157-58). Moreover, even accepting Plaintiff's argument that the RFC should have limited him to "only incidental" contact with others, any error was harmless because the VE testified at Step 5 that the housekeeping/cleaner job remained available to an individual limited to "only incidental" contact with the public or coworkers. (R. 61); *see also Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (noting that ALJ's error is harmless "if it did not affect the ALJ's ultimate determination"); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error doctrine in Social Security appeal after finding that administrative law judge made "erroneous statements of fact"). Accordingly, the ALJ properly considered Dr. Bercik's opinion in the ALJ's RFC determination.

### 3. The ALJ's Hypothetical Questions to the VE Was Proper

Plaintiff also argues that the ALJ's hypothetical questions to the VE failed to account for all of Plaintiff's mental limitations. (ECF No. 15 at 20). Plaintiff's argument, however, lacks merit. The ALJ posed three hypotheticals to the VE. First, the ALJ questioned the VE about a hypothetical individual of Plaintiff's age, education, and previous work experience, who was limited to light work and further limited to: (i) simple, repetitive tasks; (ii) occasional interaction with coworkers, the public, and supervisors; (iii) no force or assembly pace; (iv) no unprotected heights, dangerous machinery; and (v) no climbing ropes, ladders, or scaffolds. (R. 59-60). In the second hypothetical, the ALJ further limited the individual to "only incidental interaction" with coworkers and the public. (R. 61). Lastly, the ALJ returned to Hypothetical #1 but added the requirement of two extra 15-minute breaks during the workday. (R. 62).

28

Based on a review of the record, the undersigned finds that the ALJ properly evaluated the evidence and included the mental limitations that she found were supported by the medical record. *See, e.g., Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 542 n.5 (11th Cir. 2016) (no error in hypothetical that accounted for limitations in concentration, persistence and pace, even if the ALJ did not use precise language but limited claimant to "short, simple instructions . . . on routine matters"); *Szilvasi v. Comm'r of Soc. Sec.*, 555 F. App'x 898, 902 (11th Cir. 2014) (no error in hypothetical where the ALJ considered claimant's mental limitations before finding that claimant could "perform simple repetitive tasks"); *Kunz v. Comm'r of Soc. Sec.*, 539 F. App'x 996, 996 (11th Cir. 2013) (no error in hypothetical where claimant was limited to understanding and performing simple routine tasks and to brief interaction with others); *Jacobs v. Comm'r of Soc. Sec*, 520 F. App'x 948, 951 (11th Cir. 2013) (no error in hypothetical that fully accounted for moderate difficulties in concentration, persistence, and pace by limiting claimant to one to three step non-complex tasks); *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 690 (11th Cir. 2013) (no error in hypothetical where medical evidence showed claimant could perform simple, one, and two step tasks); *Washington v. Soc. Sec. Admin.*, 503 F. App'x 881, 883 (11th Cir. 2013) (no error in hypothetical that limited claimant to simple, routine, repetitive tasks and only occasional changes in work setting, judgment or decision making, as supported by the medical evidence).

On these facts, the undersigned finds that the ALJ did not err in including only the hypothetical limitations that she found were credible. *Norman v. Comm'r Soc. Sec.*, 2015 WL 4397150, at *8 (M.D. Fla. July 16, 2015) (concluding that the hypothetical to the VE was complete when the ALJ included those limitations that were credible); *Denomme*, 518 F. App'x at 879 (the ALJ presented complete hypothetical to VE that was supported by substantial evidence). A court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the

[ALJ]." *Winschel,* 631 F.3d at 1178 (citation omitted).  Accordingly, the undersigned finds that the ALJ did not err in formulating Plaintiff's RFC.

### D.  The ALJ Did Not Err at Step 5

Lastly, Plaintiff challenges the ALJ's Step 5 determination about the propriety of other jobs in the national economy that Plaintiff could still perform.  Relying on the Eleventh Circuit's 2018 decision *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018), *see* (ECF No. 15 at 22-27), Plaintiff argues that the ALJ failed to identify and resolve an apparent conflict between Plaintiff's RFC (limiting Plaintiff to "simple, repetitive tasks") and two of the jobs that the VE testified that Plaintiff could perform, i.e., cafeteria attendant and mail room clerk, both requiring a reasoning level of 2.  (ECF No. 15 at 24-28); *see also* 1991 WL 671813 (DOT description for mail room clerk) and 1991 WL 672694 (DOT description for cafeteria attendant).  More specifically, Plaintiff argues that while the RFC limited Plaintiff to jobs with a reasoning level of 1 (i.e., "simple, repetitive tasks"), the cafeteria attendant and mail room clerk jobs both had a reasoning level of 2, thus creating an apparent conflict with Plaintiff's RFC.  *See* ( ECF No. 15 at 27-28).

Pursuant to *Washington* and its progeny, the ALJ has an affirmative duty to identify and resolve any apparent conflicts between a VE's testimony and the DOT job requirements, pursuant to SSR 00-4p.  *Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019) (citing *Washington*, 906 F.3d at 1353).  An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE.  It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Washington*, 906 F.3d at 1365.  At a minimum, a conflict is apparent if a "reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.*

Significantly, Plaintiff does not challenge the ALJ's determination that Plaintiff can perform the housekeeping/cleaner job (DOT 323.687-014, with 926,000 national jobs), 1991 WL 672783; *see also* (R. 60) (VE testimony that Plaintiff could perform housekeeping/cleaner job). According to the DOT, the housekeeping/cleaner job has a reasoning level of 1, which requires "commonsense understanding to carry out simple one- or two-step instructions, deal with standardized situations with occasional or no variables in or from these situations encountered on the job." 1991 WL 672783. A reasoning level of 1 is consistent with Plaintiff's RFC limitation to "simple, repetitive tasks."[12] (R. 28); *see, e.g., Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 873 (11th Cir. 2016) (noting that job of housekeeping cleaner with a level 1 reasoning is consistent with limitation for "simple work"). Further, the existence of the housekeeping/cleaner job satisfies the Commissioner's burden at Step 5 based on the VE's testimony that there are 926,000 positions in the national economy, which is a significant number. (R. 38, 60). *See, e.g., Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987) (concluding 80,000 jobs in national economy

---

[12] Moreover, in *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020), the Eleventh Circuit suggests that there would be no inconsistency between a limitation to simple, routine, and repetitive work and a reasoning level of 2. Accordingly, the cafeteria attendant and mail room clerk jobs, both with a reasoning level of 2, may not conflict with Plaintiff's RFC. Here, however, given the availability of the housekeeping/cleaner job, the undersigned need not decide whether there is an apparent conflict between Plaintiff's RFC and the requirements of the cafeteria attendant and mail room clerk jobs. *See, e.g., Zeh v. Saul,* No. 8:18-cv-1608-T-SPF, 2019 WL 4233765, at *3-4 (M.D. Fla. Sept. 6, 2019) (noting that the court need not discuss whether ALJ erred in not addressing apparent conflict between limitation to simple, routine, repetitive tasks and jobs requiring reasoning level 2 and 3 because the VE also identified a reasoning level 1 job that claimant could perform); *Bishop v. Berryhill,* No. 2:17-CV-620-FtMDNF, 2019 WL 851415, at *4 (M.D. Fla. Feb. 22, 2019) ("In this case, the Court need not determine whether the VE's testimony that a claimant limited to simple, routine, repetitive tasks can perform work requiring an RSL of 2 because the VE identified a significant number of jobs that require only a reasoning level of 1."); *see also Tellier v. Colvin*, No. 3:15-CV-663-J-JBT, 2016 WL 7438048, at *3 (M.D. Fla. Feb. 19, 2016) (concluding that error was harmless because two occupations provided 68,000 jobs in the national economy); *Bohn v. Astrue*, No. 8:12-CV-354-T-TGW, 2013 WL 494059, at *6 (M.D. Fla. Feb. 7, 2013) (affirming administrative decision where one job alone supported ALJ's finding).

constituted a significant number of jobs); *Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931, 935 (11th Cir. 2015) (concluding 23,800 jobs nationally was a significant number of jobs).

Accordingly, because the ALJ concluded that Plaintiff can perform the housekeeping/ cleaner job, with a reasoning level of 1, the undersigned finds no error and the ALJ's Decision should be affirmed.

## VI.   **RECOMMENDATION**

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 15) be **DENIED,** that Defendant's Motion for Summary Judgment (ECF No. 16) be **GRANTED**, and that the ALJ's Decision be **AFFIRMED** for the reasons set forth above.

Within **seven (7)** days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. J. R. 4(b) (allowing 14 days for written objections unless a different time is prescribed by the Court).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida, on August 26, 2020.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Kathleen M. Williams
   All Counsel of Record